FILED

2010 Sep-22  AM 09:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KENYA S. COTTON, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   5:09- CV-1633 - LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Kenya S. Cotton, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for period of disability, Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Plaintiff  timely pursued and exhausted her administrative  remedies and the decision of the Commissioner  is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was twenty-nine years old at the time of the Administrative

Law Judge's ("ALJ's") decision, and she has an eleventh grade education. (Doc. 9 at 2.)   Her past work experience includes employment as an assistant manager at a Domino's Pizza store, a personal care assistant at a retirement home, and as a cashier at various stores including Wal-Mart, Dairy Queen, McDonald's, Burger King, Hardee's, and a Cheveron gas station.  *Id.*  Plaintiff claims that  she  became disabled on July 15, 2006, due to neck  pain, left arm numbness and loss of sensation, lower back pain and leg pain, migraine headaches, a stroke, ulcer disease, high blood pressure, and anxiety/panic attacks and depression.  *Id.*

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R.  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These

impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the

analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. (Tr. at 16.)  The ALJ further determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.  *Id.*  According to the ALJ, Plaintiff had the following severe impairments: migraine headaches, C5-6 disk protrusion, and obesity. *Id.*  However, he found that these impairments, either alone or in combination, did not meet or medically equal any of the listed impairments in Subpart P, Appendix 1.  *Id.* at 19.  The ALJ further determined that Plaintiff had the RFC to perform a reduced range of light work with a sit/stand work option and the claimant can occasionally climb ramps and stairs.  *Id.*  According to the ALJ, Plaintiff was restricted from climbing ladders, ropes, and scaffolding.  *Id.*  The ALJ also determined that Plaintiff

was restricted from working around hazardous machinery, or at dangerous, unprotected heights. *Id.* Likewise, the ALJ determined that Plaintiff could occasionally perform postural maneuvers and frequently use her left arm for gross handling. *Id.* Furthermore, the ALJ found that Plaintiff was restricted from bilateral overhead reaching and exposure to vibrations. *Id.* Lastly, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.* at 22. After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of performing a significant number of other jobs such as a kitchen worker, cleaner or detailer of automobiles. *Id.* at 16. The ALJ concluded his findings by stating that Plaintiff was not under a disability, as defined in the Social Security Act, from July 15, 2006,through the date of his decision. *Id.*

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401

(1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute  its judgment for that of the Commissioner.  *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court  scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the

correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Plaintiff contends that the ALJ's decision should be reversed and remanded because he improperly disregarded the opinion of Plaintiff's treating physician, Dr. Amy E. Carter.  (Doc. 8 at 7.)  The testimony of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The Eleventh Circuit has determined that "good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.  Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question.  *See* 20 C.F.R. § 404.1527(d)(1)-(6).

Plaintiff was examined and treated by numerous physicians, specialists, therapists, and other healthcare professionals, from September, 2005, through September, 2008.  Among those, only Dr. Carter, Plaintiff's treating physician, expressed the opinion that Plaintiff suffered from pain "to such an extent as to be distracting to the adequate performance of daily activities or work."  (Tr. at 456-57.)  However, Dr. Carter's opinion, as contained in the Clinical Assessment of Pain, is ambiguous and awkwardly extracted despite numerous findings to the contrary.  Furthermore, her opinion appears cursory, conclusory and inconsistent with other substantial medical evidence of record.

Although the ALJ gave little weight to the abovementioned portion of Dr. Carter's opinion, he gave significant weight to Dr. Carter's opinion that plaintiff was limited to those restrictions listed in the Physical Capacities Evaluation.  *Id*.  Namely, Dr. Carter opined that Plaintiff could stand for eight hours; sit for four hours; lift twenty pounds occasionally and ten pounds frequently; restricted from climbing stairs, bending and reaching overhead.  (Tr. at 455.)  The ALJ added that despite minimal physical findings in support of those limitations, Plaintiff was given "the benefit of

the doubt" and restricted to no greater than light exertional work.  (Tr. at 22.)

On October 17, 2006, Plaintiff was seen by Dr. Carter to discuss the findings of previously scheduled neurological studies.[1]  (Tr. at 212.)  Dr. Carter explained that the results of those studies indicated that Plaintiff was negative for the presence of Multiple Sclerosis.  *Id*.  Likewise, both Electromyography (EMG) and nerve conduction studies were normal.  (Tr. at 212-14.)  Dr. Carter further explained that the symptoms of numbness and tingling in Plaintiff's left arm were likely from cervical spine disc disease as indicated by MRI.  *Id*.  Dr. Carter noted that the etiology of Plaintiff's other symptoms of migraine headache, bilateral leg weakness and possible stroke, was questionable.  *Id*.  As a result of that appointment, Plaintiff was referred to neurologist Dr. John F. Rothrock for a second opinion.  *Id*.

Dr. John F. Rothrock examined Plaintiff on November 1, 2006.  (Tr. at 255.)  Following a physical examination and a review of Plaintiff's medical

---

[1]Plaintiff was referred by Dr. Carter to neurologist Dr. Jeffery T. Harris.  (Tr. at 218.)  Dr. Harris initially examined Plaintiff on August 23, 2006 for possible stroke, cervical radiculopathy, migraine headache, and possible seizure.  (Tr. at 174-75.)  Subsequently, Dr. Harris ordered a comprehensive neurological study which commenced on September 7, 2006.  (Tr. at 183-211.)

records, Dr. Rothrock opined that he saw no evidence to suggest that Plaintiff had suffered from either stroke or seizure. *Id*. at 257. Dr. Rothrock confirmed the presence of a disc bulge at the C5-C6 level; however, he indicated that there did not appear to be a significant compromise of the central nerve cord. *Id*. Dr. Rothrock further noted that Plaintiff's frequent headaches were consistent with medication (Excedrine) overuse and recommended that she should reduce her use of that medicine. *Id*. The record indicated that Plaintiff was to return for a follow up examination with Dr. Rothrock in three months. *Id*.

Plaintiff returned to Dr. Rothrock on December 27,2006, complaining of left-sided neck pain and stiffness. (Tr. at 283.) Dr. Rothrock performed a left suboccipital nerve block on Plaintiff and directed her to "call him should the block fail to help." *Id*.

On January 17, 2007, Plaintiff returned to Dr. Rothrock with left arm numbness and pain of the entire left leg. (Tr. at 281.) On that occasion, Dr. Rothrock noted:

> ...,I'm not entirely sure what to make of Ms. Cotton and her many symptoms. I don't really see much to support a diagnosis of multiple sclerosis. Despite her

hypertension (which she reports is controlled with medication), she is young for TIA/stroke, and her brain MRI findings were not supported of that diagnosis (or of multiple sclerosis, for that matter) in the past.  While compressive cervical myelopathy related to disk herniation conceivably might cause her symptoms and the mild/questionable weakness of her left hand intrinsics, I found no evidence of such compression when I reviewed her studies in November, and there is very, very little to suggest myelopathy on exam today.

(Tr. at 281.)

Dr. Rothrock advised Plaintiff not to seek further diagnostic testing and to call him should she develop radicular arm pain, significant/persistent low back pain, or leg weakness.  *Id*.  Dr. Rothrock further added that Plaintiff should increase the dosage of Topamax for migraine headache management and return for a follow up examination in February 2007.  *Id*.

Similarly, the record offers other evidence which contradicts Dr. Carter's opinion.  For instance, on January 30, 2007, and September 18, 2007, Plaintiff was examined and treated for spine related symptoms at The Orthopaedic Center in Huntsville, Alabama, by Dr. Craig Lincoln.  (Tr. at 292-93, 352-53.)  On the prior occasion, Dr. Lincoln noted that Plaintiff had "a pretty good looking MRI and has had normal nerve studies."  *Id*. at 293.

Dr. Lincoln also added that Plaintiff's symptoms were of uncertain etiology, and he thought she should be working. *Id*. Likewise, on the latter occasion, Dr. Lincoln reasserted that Plaintiff's symptoms were of uncertain etiology. *Id*. at 353. Foremost, Dr. Lincoln recorded:

> . . . I've had a long discussion with Ms. Cotton. I don't really see any reasons for any lower extremity pain or reason that she would have difficulty with any prolonged standing or any reason for impairment for that matter. She does tell me that she's applying for disability and I just told her that I just couldn't support that since I really saw no objective evidence for this. . .

*Id*.

Dr. Lincoln noted that there was no real reason for Plaintiff to undergo an epidural procedure and instead, discussed the appropriateness of weight loss and advised her to continue pool therapy. *Id*. In response to Plaintiff's expressed concern that she could have arthritis, Dr. Lincoln ordered multiple laboratory studies, including rheumatoid factor. *Id*.

As a result of a positive Rh factor, Plaintiff was referred to rheumatologist Dr. Jesus Hernandez. (Tr. at 447-54.) On October 2, 2007, Dr. Hernandez found that Plaintiff was negative regarding Cyclic

Citrullinated Peptide (CCP) antibody test, as well as a lack of significant inflammation of the small joints of the hands and feet.  *Id*. at 450.  In response to Plaintiff's chief complaint of low back pain, Dr. Hernandez explained that rheumatoid arthritis does not cause low back pain and further noted that his findings argued against a diagnosis of rheumatoid arthritis. *Id*.

With the exception of Dr. Carter's Clinical Assessment of Pain, the aforementioned evidence is consistent with the remaining evidence of record.  The Court finds that there is substantial evidence to support the ALJ's decision to accord little weight to Dr. Carter's Clinical Assessment of Pain.  Furthermore, the ALJ adequately provided and discussed several specific opinions to validate his decisions.  (Tr. at 20-22.)  Specifically, the ALJ decided to give little weight to Dr. Carter's opinion because he found it to be based upon Plaintiff's subjective complaints and not consistent with any actual physical findings.  *Id*. at 22.  Therefore, the Court finds that substantial evidence supports the Commissioner's decision that Plaintiff failed to prove she was disabled.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Ms. Cotton's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this <u>22nd</u> day of <u>September 2010</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**